Thank you. Mr. Mack, whenever you're ready. Thank you. May it please the Court, I'm Walter Mack. I represent the appellant, Mitchell Kossoff, on this matter. The primary issue that I believe is important here is that the bankruptcy court and the district court in every instance was willing to accept that the collective entity doctrine was sufficient to basically eliminate Mr. Kossoff's Fifth Amendment privilege. And in essence, in addition to that, was the fact that he was a sole manager, sole owner, 100% owner of Kossoff PLLC. And it made it even, and I guess an additional point, is the point that Judge Jones, the bankruptcy court judge, never actually analyzed our act of production privilege argument. And when Judge Jones ruled — Can I just jump in for a moment? Certainly, Judge. So I have a concern with regard to this argument you're making about the Fifth Amendment and whether or not those issues are even in front of us. The notice of appeal in this case pertained to the finding, the two orders relating to the mootness. How is the Fifth Amendment claim before us now? Because what we're looking at, what we're considering is the appeal of the district court's finding of mootness of these claims regarding the denial of leave to appeal and denial of the prior order to compel. Explain to me sort of procedurally how this Fifth Amendment claim is in front of us right now. I would explain that, in essence, there was never a determination below that there was a Fifth Amendment privilege. It was never analyzed by Judge Jones. When was that claim you're making, that there was a failure of the bankruptcy court to consider that, when was that appealed? Because I don't see how that issue is in front of us right now. That was appealed after our state was denied to Judge Hellerstein. Judge Hellerstein ruled. But then that wasn't appealed to us, was it? That was not appealed. So how can we consider that now? That could have been appealed to us, correct? It could have been appealed, but we decided at the time and recognized that there were no resources available of any kind to this defendant. That all his money and efforts were there. And we felt that Judge Hellerstein's opinion made it clear that, with respect to the potential of testimonial material question-by-question analysis, that that would be a chance that we should preserve it. But as to documents, he was willing to accept that we had to produce the documents, which we did. And that was what happened. However, subsequent to that, we, and the argument is preserved in the appendix, a long argument. But in essence, we argued the testimonial privilege to Judge Jones in November, followed by the certification. Our arguments were rejected. They were rejected on the grounds that basically he was the corporate or representative, that he did not have a Fifth Amendment privilege, and, in essence, ordered and certified that he should be arrested, and basically until he testified. The existence or not of a Fifth Amendment privilege is affected, it seems to me, by whether the order is directing an artificial entity to produce the documents. I understand that Mr. Kossoff became a corporation or created a corporation, but he didn't become a corporation. The corporation is, he sought the benefit of that form of doing business, and there's a downside to it. There's a downside to every good thing. And one of them is he created an artificial entity, and that has been, and that is required to produce documents. It doesn't have a Fifth Amendment right. It doesn't exist as a person in that sense. Well, Judge Jacobs, what we argued, and which is preserved in the Braswell footnote, is that when this was, first of all, the New York State statute, professional limited liability law, is very hard to distinguish from the normal law, and were it a sole proprietorship. And we tried in our briefing to reflect that, but we didn't rely on that. I mean, that was an argument that was made. It was rejected. We appealed it, and Judge Hallerstein resolved it exactly as you just asked us, and for that reason, but did preserve that, okay, that's okay as to documents. But, hey, if you come to a point where there's some testimonial argument and cited law whatsoever to do so, we did not appeal that ruling. However, we did appeal the ruling that we had Fifth Amendment privileges with respect to schedules and with respect to a meeting of creditors. And our argument there was you cannot prepare those schedules. Those schedules are not documents which are there. You have to prepare them and swear to them and discuss all the issues that go with the particular claims. And as to creditors, how can you, and that is our argument and was our argument at every stage, it was our argument to Judge Olkin when we appealed the decision to certify our client in contempt. There was no analysis. There was Judge Hallerstein's opinion, which we cited to Judge Olkin, which specifically reserved the testimonial aspects. It did not deal with schedules, but the schedules were not presented before Judge Hallerstein. They were presented to Judge Olkin. Did you seek this court's review on the bankruptcy court's contempt order? Yes. And how? Explain to me. Because that was what we appealed to Judge Olkin, and that's what we argued before Judge Olkin. We produced very much the same materials that are produced here in our appendix, and Judge Olkin basically did not analyze. But what you've appealed before us is the dismissing the appeal as moot and denying reconsideration of the appeal. So I don't know how we are in a position to grant your request for vacating and reversing the orders designating your client as the responsible officer or the original contempt order. Can you explain to me how we marry those two? Because all we had was Judge Olkin's review. We even filed another appeal just to avoid that specific argument, but he never considered. He never considered the certification of contempt, which was what the issue we presented to Judge Olkin. Right, but I think what we're trying to focus you in on is once you got the decision, the unfavorable decision from Judge Etkin. Etkin, forgive me. Yeah, you did not seek to appeal that to this court. Yes, we did, Your Honor. You filed an appeal to this court. We have two appeals. They were consolidated. We appealed everything that Judge Olkin did. And it was ruled on? He never won. He said it was mooted in the second. No, no, by this court. That's what we're getting at, an appeal to this court from Judge Etkin's decision. But you didn't seek that. We appealed that, and we appealed his prior order, which he basically denied the stay. I think that's L-122. We moved to consolidate both appeals. So that was what we were appealing was Judge Olkin's unwillingness to at least even analyze our Fifth Amendment and simply saying that we had not met the standards for a stay. And our argument here is that, gee whiz, if there is something that should provoke somebody along the line to analyze whether we have a Fifth Amendment privilege and he's about to go to jail at a time of a pandemic and a sick person, what more do we need? So I believe that's L-122. And we consolidated both appeals. That's why we filed two specific appeals, because we weren't certain. We moved for reconsideration, and the reconsideration was of his earlier opinion that basically he was going to deny the stay and not permit us. I mean, basically send our person to prison on the certificate of intent. So those both. We couldn't appeal anything more. He did. We appealed everything he did. And that's why we have two separate appeals that we moved to consolidate. I believe it's L-122 and L-124. And that's what the record should reflect. Those are only decisions that Judge Olkin made. Okay. All right. You have some time for rebuttal. Thank you. Thank you. Yes, whenever you're ready. Good morning, and may it please the court. I'm Minta Nestor. I am here on behalf of the appellee, Albert Toket, in his capacity as the Chapter 7 trustee of Kossoff PLLC. While Mr. Kossoff asked this court to allow him a forum to relocate his Fifth Amendment arguments, we respectfully submit that they have been considered and adjudicated by final orders of the lower courts and that this appeal, the issues that are put before this court on this appeal, are moot, as the district court found. This matter originated in a Chapter 7 case where the bankruptcy court had designated Mr. Kossoff as the responsible officer to perform the duties of the debtor pursuant to Bankruptcy Rule 9001-5. Following that, the bankruptcy court entered the order to compel, which recognized the collective entity doctrine applied and rendered certain privileges, including the act of production privilege, inapplicable in these instances. This order to compel directed Mr. Kossoff to do very specific things in his representative capacity. It's made clear in the language of that order. These specific things include performing the duties of the debtor, which included filing schedules, producing requested information to the trustee, and appearing to testify at a Section 341 meeting of creditors. Mr. Kossoff sought to appeal this order and was denied permission to do so. And in that order by Judge Hellerstein, the judge noted that document production could be made as a corporate action. And he did note, as we have discussed, that providing oral testimony may implicate Mr. Kossoff's individual Fifth Amendment rights. That order was not appealed, but importantly, on the oral testimony component, that right has remained undisturbed. The 341 meeting was held on February 24th. Mr. Kossoff appeared. He answered certain questions. He invoked the Fifth Amendment privilege with respect to others, and neither the trustee nor any other creditor attending to question Mr. Kossoff challenged that. The 341 meeting is now closed. Returning to the Bankruptcy Court, the Bankruptcy Court recognized that nothing short of the threat of incarceration would incentivize Mr. Kossoff to comply and cooperate in accordance with the Bankruptcy Court's orders and entered that contempt order. Specifically, and this is an important point, the Bankruptcy Court found that Mr. Kossoff was in civil contempt for his failure to provide schedules as required by the Court's orders that are, again, final and not subject to appeal, and to produce the necessary information, which included a creditor list. That is the order, along with the submissions order, that Mr. Kossoff sought to appeal. After submissions were made by the parties to the District Court, the District Court dissolved the temporary stay and denied the emergency motion seeking appeal. That decision was not appealed by Mr. Kossoff. The District Court then concluded that the appeal was moved. That is one of the orders that has been appealed by Mr. Kossoff. Can I just ask, because there are just a couple of things and I'm hoping you can narrow what it is that we're focusing on. Why shouldn't we read the notice of appeal as contesting the orders underlying the contempt order? I mean, we are required to construe it liberally, right? Yes, Your Honor. So the notice of appeal cites and attaches two orders, the dismissal, which was on mutinous grounds, and the merits were not reached, as well as the reconsideration motion. So our position is, and I believe it is here that we look to, where there was a bankruptcy court and the District Court reconsideration of the dismissal for abuse of discretion. Oh, I apologize. They look back without reaching the merits. So whereas this court would be passing on the issue of mootness, it would not go to the merits. Certainly this court may affirm for any grounds in the record, but I will. I'm sorry, let me ask the question again. Why shouldn't we construe the notice of appeal as contesting the orders underlying the contempt order? Because I think the notice of appeal is very clear that it is looking at the mootness and the reconsideration, which do not get to the merits of the contempt order. While this court is free to affirm for any grounds supported by the record, the Supreme Court has made clear that, as a general rule, of course, the federal appellate court does not consider an issue not passed upon below, and the merits of the contempt order were not passed upon. The threshold issue of mootness was not. Well, how does that help you? Because I think he argues that he needs to have somebody pass upon these Fifth Amendment arguments, and nobody has. We believe somebody has, Your Honor. We believe the bankruptcy court in several instances considered and rejected both parties' arguments on the collective act entity doctrine and how that interacts with the act of production privilege. In the order to compel, the bankruptcy court made an express finding that the collective entity doctrine applies in light of his role as the designated officer, and that, in light of Braswell and various other orders. So you think that settles the Fifth Amendment issue? We do. Okay. And so you're arguing that Kosov is still in contempt. Is that correct? We believe the trustee's position is that he has not yet complied with the court's orders, but we note that the bankruptcy court has subsequently stated. That's supposed to be a friendly question. Is he still in contempt or not? I'm not trying to tie you up in knots here. I'm just trying to figure out what it is that we're dealing with. Would you argue that he's still in contempt? Mr. Kosov has conceded that he is still in contempt, Your Honor. Okay. So if we decide that the fact that he is still in contempt means the issue is not moot, how do we still find freedom? May I take a step back? We believe that to look at what the contempt order, the contours of the contempt order, which found him in contempt for failing to provide schedules and for providing information to the trustee. He has submitted schedules, and the bankruptcy court has now said that it does not intend to issue a bench warrant. He has made the filing such that the bench warrant will not be triggered pursuant to the Fifth Amendment. Okay. So I agree that you – I accept and agree that you agree – that it is your position that the issue is now moot. I'm asking for you to give me the opportunity to tell me how, even if we disagree with you and think the issue is live, how do we still find freedom? This court is – this court may consider any grounds in the record that it feels would support an affirmance. That's clear. So if there is another ground in this record that the court feels would support our argument that the collective entity doctrine applies to the extent that the act of protection of privilege is not applicable to Mr. Kossoff, that is certainly something the court can find. And then to just kind of put all the pieces together for me, if he is still in contempt, why is it still moot? It's still moot because there is no remedy that this court can fashion for Mr. Kossoff at this point. His obligations are subject to final non-appealable orders. His potential privilege for oral testimony, as recognized by Judge Hellerstein, has not been disturbed. That may be a matter for a different day, but at this point it has not been disturbed or curtailed in any way. All right. I see that I'm out of time, so if the court does not have any other questions, we respectfully request that the court dismiss the appeal or in the alternative affirm the dismissal and reconsideration orders. All right. Thank you. May I have a minute? Yes, Mr. Mackey. Reserve some time. Just for the record, there are two appeals. The other number is 220124, which is actually and we move to consolidate that. I would say this is probably the most important point. First, he still is in contempt. Very recently we've been told that. And Judge Jones' brief, his stay of the so-called incarceration, was at this stage awaiting further action by the trustee. So he is still held in contempt. He is in custody. He did everything necessary in the criminal system to do what was there. And finally, this is a Fifth Amendment case. It deserved analysis. What could we do? We appealed every decision by Judge Oaken, if I have it wrong. Forget it. I learn something every day. So we appealed everything. He had before him Judge Jones' certificate of contempt. That was what we were dealing with. It was trying to keep our client, who basically we felt could not go into custody at that time. So I don't know what more we could have done to incorporate the certificate, because that's what we appealed to Judge Oaken. He chose not to deal with it, not to analyze it, and basically said, you haven't given us enough for a stay. We're saying there was room for doubt. We were entitled to a Fifth Amendment analysis. Judge Jones, the bankruptcy court, never analyzed our claim. We went before him on the act of production. We were prepared. There's none of this blanket assertion stuff. We were prepared to make a showing before him. In essence, he said, I don't care. You are the representative. You don't have a Fifth Amendment privilege. Proceed. That's what we appealed to Judge Hellerstein. He wrote a very clear opinion that should have had some bearing on Judge Etkin's view of what should be done. The fact that he didn't choose to do so and simply apply common stay, that's what he ordered twice. We appealed every order he issued. I don't know what more we could have done to preserve our Fifth Amendment argument. Thank you for listening. Thank you to all counsel. We appreciate your efforts on this, and we'll take the case under advisement.